UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In Re:                                           Chapter 11

E&S CONTRACTING SERVICES OF WNY, INC.            Case No. 1-15-10412-clb
   a/k/a MCD PLUMBING, INC.
                      Debtor.    Hon. Carl L. Bucki

**MOTION PURSUANT TO 11 USC §105(a) AND §363(c)(2)**
**AUTHORIZING USE OF CASH COLLATERAL AND REQUEST**
**FOR EMERGENCY AND INTERIM RELIEF**

The debtor, E&S Contracting Services of WNY, Inc. a/k/a MCD Plumbing, Inc. (the "Debtor"), by and through its proposed attorneys, Amigone, Sanchez & Mattrey, LLP, Arthur G. Baumeister, Jr., Esq., of Counsel, as and for its motion for authorization to use cash collateral, including use on an emergency and interim basis, respectfully shows the Court as follows:

      1.     The Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on March 11, 2015 ("Petition Date") and is authorized to operate its business pursuant to 11 U.S.C. §§ 1107, 1108.

<u>Jurisdiction</u>

      2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b) and §157(a), (c). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A),(M).

<u>The Debtor's Business Operations</u>

      3.     The Debtor is a New York business corporation, that is the successor by merger with MCD Plumbing, Inc. MCD Plumbing, Inc. ("MCD") was formed in or

about July, 2006 and E&S Contracting Services of WNY, Inc. ("E&S") was formed in or about June, 2010. By Certificate of Merger filed on January 26, 2015 in the New York State Department of State, MCD was merged into E&S.

4. Michael C. Diebold had been the holder of a 100% shareholder interest in MCD prior to the merger and Lisa M. Diebold had been the holder of a 100% shareholder interest in E&S prior to the merger.

5. Upon the effective date of the merger, Michael C. Diebold became the holder of a 51% shareholder interest in the Debtor and Lisa A. Diebold became the holder of a 49% shareholder interest in the Debtor.

6. Michael C. Diebold is a director, president and treasurer of the Debtor. Lisa M. Diebold is a director, vice president and secretary of the Debtor.

7. The Debtor is currently a non-union commercial plumbing contractor.

8. MCD was the debtor in a prior Chapter 11 case filed on June 1, 2012, BK No. 12-11759 (the "MCD Chapter 11 Case"). At that time, MCD had been a party to a certain collective bargaining agreement with the Journeymen Plumbers/Steamfitters and Apprentices UA Local Union #22 of Western New York (the "Union") through its membership in the Western New York Association of Plumbing (the "Union CBA").

9. By Order entered in the MCD Chapter 11 Case, it was confirmed that MCD would no longer be a party to the Union CBA upon its expiration and any renewal of the Union CBA would not be effective as against MCD.

10. During the pendency of the MCD Chapter 11 Case, MCD and its principal, Michael C. Diebold, entered into a settlement with the National Labor Relations Board

(the "NLRB") pursuant to which MCD and Mr. Diebold agreed to entry of judgment in the total amount of $457,996 representing the Union's claims for unpaid wages and benefits.

11. The MCD Chapter 11 Case was dismissed on June 6, 2014 after it was determined that it was not cost effective to pursue an appeal of the Court's Order denying MCD's motion for rejection of the Union CBA and that it was otherwise not feasible to reorganize MCD's business within the framework of the MCD Chapter 11 Case.

12. At the time of dismissal of the MCD Chapter 11 Case, E&S, through Lisa M. Diebold was operating a similar commercial plumbing contracting business.

13. The NLRB took steps to enforce its judgment against MCD during the summer and fall of 2014. Subpoenas were served on the customers of MCD. This had a chilling effect on the both MCD and E&S.

14. E&S recognized that the NLRB (and other creditors of MCD) would likely take legal action against E&S contending that it was a successor of MCD, liable for MCD's debts. Although E&S maintained and would continue to maintain that it was not the legal successor to MCD, E&S would not have been able to maintain its business operations and defend against such potential legal claims.

15. As a result, E&S and MCD decided to merge in order to address the claims of MCD's creditors in one proceeding. Consequently, the Debtor believes it will be able to maintain and grow its business operations while providing the best opportunity for creditors of MCD to collect on their claims.

## Assets and Liabilities of the Debtors

16. The following creditor holds or may claim a lien in the cash and accounts receivable of the Debtor:

| Name of Creditor | Nature of Claimed Lien | Approximate Amount Due |
|---|---|---|
| M&T Bank | Blanket Security Interest arising from UCC Financing Statements filed on 4/22/08, 3/26/09 & 3/2/11. and continued on 10/26/12 & 10/1/13 | $342,651.50 (reduced to judgment on 1/13/15) (the "M&T Secured Indebtedness") |

17. The scheduled value of the assets against which the M&T Secured Indebtedness is perfected is estimated at $220,500

18. The Debtor is not aware of any other creditor holding or claiming a lien in the cash or accounts receivable of the Debtor.

19. The Debtor has scheduled accounts receivable in the approximate amount of $90,000, work in process in the approximate amount of $75,000 and $50,000 in cash on hand.

## Adequate Protection and Use of Cash Collateral

20. Annexed hereto as Exhibit "A" is a thirteen (13) week expense budget for the Debtor. The Debtor estimates gross revenues during the period will be approximately $450,000, and expenses during the period of approximately $433,380.

21. Included in the monthly budget are proposed adequate protection payments to M&T Bank for the Secured M&T Bank Indebtedness in the monthly amount of $2,500, as well as, $695 for the one (1) vehicle loans held by M&T Bank and secured by a 2008 Ford F-150 truck.

22. In addition, the Debtor proposes that M&T Bank be granted roll-over or replacement liens granting security to the same extent and with respect to the same assets as served as collateral for their respective pre-petition claims, to the extent of cash collateral used, without the need for any further filing or recordation thereof.

23. The proposed adequate protection payments are without prejudice to any party to seek adjustment of same in a future motion.

## Emergency Use of Cash Collateral

24. The Debtor has an immediate need for use of cash collateral in order to preserve the assets of the bankruptcy estate and continue operation of its business for the benefit of creditors.

25. Pending an interim and final hearing on the Debtor's application to use cash collateral, use of cash collateral is needed on an emergency basis to pay expenses to become due within the next week of the Debtor's operations, which expenses if not paid will cause immediate and irreparable harm.

26. On March 13, 2015, the Debtor is due to meet payroll for its employees. Contemporaneous with the filing of this motion is a motion to seek permission to pay wages earned pre-petition.

27. Specifically, the Debtor seeks authorization to use up to $17,600 through Thursday, March 19, 2015 for the following purposes, with any excess to be used for any misc. expenses that may be reasonably and necessarily incurred in the ordinary operation of the Debtor's business:

| | |
|---|---|
| Payroll: | $17,000 |
| Materials and supplies for pending jobs: | 500 |
| Vehicle Expense | 150 |
| Total | $17,600 |

28. The payroll expenses is for wages earned during the week 3/1/15 - 3/7/15.

29. The gross payroll for Michael C. Diebold for said week is $1,200 and for Lisa M. Diebold is $740.

30. Payment of these expenses is necessary to continue ongoing jobs and maintain employees and to maintain insurance coverage on assets of the bankruptcy estate.

WHEREFORE, the Debtor respectfully requests that the Court: (1) Authorize the Debtor's use of cash collateral on an emergency basis pending an interim hearing for reasonable and necessary operating expenses not to exceed $17,600, with the adequate protection proposed herein; (2) Authorize the Debtor's use of cash collateral upon the interim hearing in accordance with the budget set forth herein with a 15% variance, with the adequate protection proposed herein; (3) Authorize the Debtor's use of cash collateral upon the final hearing in accordance with the budget set forth herein with a 15% variance, with the adequate protection proposed herein; and (4) Grant such other and further relief as the Court may deem just and proper.

DATED:  March 12, 2015
        Buffalo, New York

                **AMIGONE, SANCHEZ & MATTREY, LLP**

By: /s/ Arthur G. Baumeister, Jr.
     Arthur G. Baumeister, Jr., Esq., of Counsel
     Attorneys for Debtor
     Office and P.O. Address
     1300 Main Place Tower
     350 Main Street
     Buffalo, New York 14202
     Phone: (716) 852-1300
     Email: abaumeister@amigonesanchez.com